UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

WARNER BROS. ENTERTAINMENT
INC., DC COMICS, SANRIO, INC.,
DISNEY ENTERPRISES, INC.,
and NIKE, INC.

             Plaintiffs,

vs.

NOEL FORTI AHORRIO; ALMANCES
COLON; BIENVENIDO TORRES & CARMEN
ROMAN RODRIGUEZ d/b/a BI
ACCESSORIES; BORDADOS & UNIFORMES
ALANGIE; BORDADOS INTIMA; JOSE
MANUEL MARTINEZ d/b/a BORICUA
EAGLE a/k/a BORICUA EAGLES; RICARDO
CALLIRGOS SOUBON d/b/a CAMISETAS
SOCCER; CARIBBEAN NOVELTY, INC.;
ELIDIO GONZALEZ VELEZ d/b/a
CARIBBEAN NOVELTY; CARMEN KIOSKO;
ELISIO ROMERO CASELLAS; CHINA TOWN
a/k/a CHINA TOWN FASHION, BAYAMON;
CHINA TOWN a/k/a CHINA TOWN
FASHION, CAROLINA; CHINA TOWN a/k/a
CHINA TOWN FASHION, CAGUAS;
COMMUNIKART, INC. d/b/a APPLE BERRY
STORE; COYO OUTFIELD; D'FIESTA PARTY
SHOP; DANDY'S DISCOUNT; JOSE A. RAMOS
LARUY d/b/a DARE TO BE UNIQUE;
DIGITEK SOLUTIONS a/k/a EVOTEK; LUIS
CORTEZ RIVERA AND BETZIADA REYES
FIGUEROA d/b/a D'SHOW IMPORTS; EL
DUGOUT DE WILLIAM MELÉNDEZ; ROSE
MARY NIEVES d/b/a FRARONI DESIGNS;
GARBADOS Y MAS IDEAS; EZEQUIEL
RIVERA CRUZ d/b/a GORDO FASHION;
GRAFIK ARTE; TEOFILO GUERRERO;
IMPRESO ADONAI; JOYERIA ENSUEÑO;

CIVIL NO.: 14-1098 JAG

FOR:

(1)     COPYRIGHT INFRINGEMENT

(2)     INFRINGEMENT OF
         REGISTERED TRADEMARKS
         AND TRADEMARK
         COUNTERFEITING;

(3)     FALSE DESIGNATION OF
         ORIGIN AND FALSE
         DESCRIPTION;

FILED UNDER SEAL

RECEIPT # PUX1000 24467
AMOUNT: 400

FEB 03 2014

CASHIER'S SIGNATURE

JOYERIA JERRY SOSO; JOYERIA LA MIA;
JOYERÍAS BORROTO; JUANITO LAST NAME
UNKNOWN; RUBEN VILLAFAÑE AND LINA
PAOLA LONDONO CIRO d/b/a KASEY
ACCESSORIES #3; KEY CUTS & MORE;
MICHELLE RAMOS LLACORA d/b/a KIOSKO
34; KIOSKO ALTAGRACIAS; LA PIÑATA
PARTY SHOP; LAS GANGAS PARTY SHOP;
LEBIRAM STEEL; LUIS LAST NAME
UNKNOWN; LUMINOCOLORS; DOROTHY
MALDONADO; MARIA LAST NAME
UNKNOWN; MARIBEL RIVERA VEGA d/b/a
MARIE'S ACCESSORIES; JOSE M. GARCIA
OYOLA d/b/a MARY & JOE FANTASY;
MARY'S GORRAS; MEGA OUTLET;
MILLENIUM T-SHIRT PRINT; NAMES AND
PLATES; NEW AGE DIGITAL; PEDRO LAST
NAME UNKNOWN; QILONG TAO HERBAL
IMPORTS; RELOJERIA EL OTRO AMIGO;
SANDRA LAST NAME UNKNOWN; JUAN
RAFAEL ALICIA RODRIGUEZ d/b/a SPORTS
AMBITION; STREET TALK 1; SUGELI KIOSKO;
TIENDA GLAMOUR a/k/a GLAMOUR CAFÉ;
UTUADO BEAUTY SUPPLY; VASCONIA
a/k/a LONDON CITY; and ZONA URBANA,

     Defendants.

---

## COMPLAINT

    Plaintiffs, Warner Bros. Entertainment Inc., DC Comics, Sanrio, Inc., Disney

Enterprises, Inc., and NIKE, Inc. (hereinafter "Plaintiffs"), by and through their

undersigned attorneys, allege for its Complaint as follows:

### INTRODUCTION

1.      Plaintiffs file this action against the above named Defendants who have unlawfully engaged in the manufacture, importation, distribution, sale and/or offer for sale of counterfeit merchandise bearing exact copies and/or colorable duplications of Plaintiffs' copyrights, trademarks, or other exclusive properties.

2.      For violation of the Federal Statutes alleged in the Complaint, Plaintiffs seek a Temporary Restraining Order, Order of Seizure, Preliminary and Permanent Injunction, damages, costs and attorneys' fees as authorized by the Copyright Act and Lanham Act.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as the Plaintiff's cause of action arises under The Copyright Act, 17 U.S.C. § 101 et. seq. and The Federal Trademark Act ("The Lanham Act of 1946"), 15 U.S.C. § 1051 et. seq.

4.      Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and § 1400(a).

## THE PARTIES
### PLAINTIFFS

5.      Warner Bros. Entertainment Inc. (hereinafter "Warner Bros." or "Plaintiff" or "Plaintiffs") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California. Warner Bros., or one of its wholly owned subsidiaries, is engaged in a variety of businesses including,

without limitation, the production, distribution and broadcast of filmed entertainment, including motion pictures and television programming.

A.  Warner Bros. and its predecessors has been one of the largest and well known producers and distributors of feature films in the world. Today, motion pictures are distributed through its subsidiary, WB Studio Enterprises Inc. Other subsidiaries of Warner Bros. include Warner Bros. Consumer Products Inc.

B.  A significant aspect of Warner Bros.' business is the merchandising and licensing of distinctive copyrights associated with its media product, specifically including the *Looney Tunes* animated shorts. The distinctive trademarks and copyrights licensed and/or merchandised by Warner Bros. Consumer Products Inc. include, but are not limited to, the world-famous characters featured in such programming and films, specifically including the characters Tweety, Taz and Bugs Bunny (hereinafter individually and collectively referred to as the "Warner Bros. Characters").

C.  The revenue from products sold in the United States which use the Warner Bros. Characters is substantial. The appearance and other features of the Warner Bros. Characters are inherently distinctive and serve to identify Warner Bros. and its licensees as the source of products bearing the Warner Bros. Characters. The design, configuration and distinctive features of the Warner Bros. Characters and other Warner Bros. copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Warner Bros.' Copyrighted Designs") are wholly original with Warner Bros. and, as fixed in various tangible media, including

4

merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§101, et seq.

D.     Warner Bros. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Warner Bros.' Copyrighted Designs, and Warner Bros. owns one or more certificates of registration for works in which each of Warner Bros.' Copyrighted Designs appear. A representative list of copyright registrations for Warner Bros.' Copyrighted Designs is indexed in Exhibit A herein.

E.     Warner Bros. and those acting under its authority have complied with their obligations under the copyright laws, and Warner Bros. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Warner Bros.' Copyrighted Designs.

F.     Warner Bros. is the owner of world famous registered marks which serve to distinguish Warner Bros. products. Each year Warner Bros. spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the Warner Bros. Characters is indexed in Exhibit B herein (collectively the Warner Bros. Trademarks").

G.     The Warner Bros. Trademarks are all valid, extant and in full force and effect. Warner Bros. Trademarks are all exclusively owned by Warner Bros. Warner Bros. has continuously used each of the Warner Bros. Trademarks from the registration

date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

H.   As a result of advertising and sales, together with longstanding consumer acceptance, the Warner Bros. Trademarks identify Warner Bros.' products and authorized sales of these products. The Warner Bros. Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the World. The Warner Bros. Characters, Copyrighted Designs and Trademarks are collectively referred to herein as the "Warner Bros. Properties."

6.   Plaintiff DC Comics (hereinafter "DC" or "Plaintiff" or "Plaintiffs") is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York. DC is engaged in the business of publishing comic magazines and is among the most well-known and successful publishers of comic magazines in the world.

A.   A significant aspect of DC's business is the licensing of distinctive trademarks and copyrights associated with its highly successful and well-known characters Batman, Superman, Swamp Thing, Wonder Woman and The Flash (hereinafter individually and collectively referred to as the "DC Characters"). Of these, two of the most successful have been Batman and Superman.

B.   Batman first appeared in the May 1939 issue of "Detective Comics." Numerous related characters, including Robin, The Riddler, Two Face, Catwoman, The Penguin and The Joker as well as other popular characters associated with Batman were

6

soon introduced to the public. (Batman and the related characters are hereinafter collectively referred to as the "Batman Characters"). Superman appeared at least as early as 1938. Numerous related characters, including Clark Kent, Lois Lane, and Lex Luthor as well as other popular characters associated with Superman were soon introduced to the public. (Superman and the related characters are hereinafter collectively referred to as the "Superman Characters").

        C.     Since their introductions, the Batman Characters and Superman Characters have been featured in many formats including movie serials, newspaper comic strips, radio shows, animated television series, live action television series, animated motion pictures, live action motion pictures and theatrical presentations, among others. Television series featuring the Batman and Superman Characters have since been in continuous television syndication in the United States and abroad from 1966 through the present. These appearances have expanded the popularity of the Batman Characters and Superman Characters beyond the comic book medium and market.

        D.     The Batman Characters have also been featured in numerous theatrical motion pictures since their introduction. The most recent motion picture featuring the Batman Characters are "The Dark Knight,", released on July 18, 2008, which has generated over $530 million dollars in domestic box office receipts and over $465 million dollars in international box office receipts, and "The Dark Knight Rises", released July 20, 2012, which has generated over $448 million dollars in domestic box

office receipts and over $636 million dollars in international box office receipts. Other motion pictures featuring the Batman Characters include "Batman," "Batman Returns," "Batman Forever," and have resulted in domestic gross box office in the millions of dollars, not to mention additional revenues from syndication rights and home video distribution. "Batman" proved to be among the most successful licensing and merchandising ventures of all time, with gross retail sales of associated licensed merchandise exceeding $1,000,000,000.

        E.    The Superman Characters have also appeared in numerous theatrical motion pictures since their introduction. The most recent motion pictures featuring the Superman Characters are "Superman Returns," released on June 28, 2006, which has generated over $200 million dollars in domestic box office receipts and over $190 million dollars in international box office receipts, and "Man of Steel", released on June 14, 2013, which has generated over $291 million dollars in domestic box office receipts and over $377 million dollars in international box office receipts. The Superman Characters have also been featured in numerous other theatrical motion pictures, including a series of four motion pictures starring Christopher Reeve: "Superman," "Superman II," "Superman III," and "Superman IV The Quest for Peace;" that collectively generated over $750 million dollars in worldwide box office receipts.

        F.    The revenue from products and services using the DC Characters sold in the United States is substantial. The appearance and other features of the DC Characters are inherently distinctive and serve to identify DC and its licensees as the

source of products and services bearing the DC Characters. The design, configuration and distinctive features of the DC Characters and other DC Comics copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "DC Copyrighted Designs") are wholly original with DC Comics and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101, et seq. DC is the owner of the DC Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.

      G.    DC has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the DC Copyrighted Designs, and DC Comics owns one or more certificates of registration for works in which each of the DC Copyrighted Designs appear. An index of representative copyright registrations for the DC Copyrighted Designs is attached as Exhibit A herein.

      H.    Products featuring the DC Copyrighted Designs manufactured, sold and distributed by DC or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws. DC and those acting under its authority have complied with their obligations under the copyright laws and DC has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of the DC Copyrighted Designs.

I.     DC owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market and sell products bearing the trademarks, trade names, service marks, artwork, characters and other distinctive elements for and incorporating the DC Characters.

J.     DC is the owner of world famous registered marks that serve to distinguish DC's products. Each year DC spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the DC Comics Characters is attached as Exhibit B (collectively the "DC Trademarks").

K.     The DC Trademarks are all valid, extant and in full force and effect. The DC Trademarks are all exclusively owned by DC Comics. DC has continuously used each of the DC Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

L.     DC Comics has granted and transferred to its related companies, Warner Bros. Consumer Products Inc., Warner Bros. Home Entertainment and WB Studio Enterprises Inc., subsidiaries of Warner Bros., the right to supervise in the United States the merchandising and licensing of the copyrighted elements, trademarks, trade names and service marks incorporated in or associated with the DC Characters. Currently, Plaintiffs have numerous active license agreements in the United States. These agreements provide for the authorized use of the DC Characters on products and in connection with services, including toys and games, candy and food services,

records, tapes and CD's, jewelry, watches, furniture, stationary, toiletries, t-shirts and numerous items of children's and adult apparel, among others.

     M.    As a result of advertising and sales, together with longstanding consumer acceptance, the DC Trademarks identify DC's products and authorized sales of these products. The DC Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.

     7.    Plaintiff, Sanrio, Inc. (hereinafter "Sanrio" or "Plaintiff" or "Plaintiffs), is a corporation, duly organized and existing under the laws of the State of California, having its principal place of business in South San Francisco, CA. Sanrio is a wholly owned subsidiary of Sanrio Company, Ltd. Sanrio Company, Ltd. is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan (hereinafter referred to as "Sanrio Company").

     A.    For more than forty years, Sanrio Company has been engaged in the business of manufacturing, distributing and selling a wide range of products including, without limitation, character artwork created, developed and designed by Sanrio Company for use by children and young adults. Certain of the characters and designs have achieved such global fame and popularity that Sanrio Company has produced and distributed television programming for children based on the character artwork. One such television program is the animated television series entitled *Hello Kitty.*

B.     A significant source of revenue for Sanrio Company is the merchandising and licensing of distinctive elements bearing character artwork, including Bad Badtz Maru, Chococat, Hello Kitty, KeroKeroKeroppi, Landy, Little Twin Stars, Monkichi, My Melody, Patty and Jimmy, Pekkle, Picke Bicke, Pochacco, Tuxedo Sam, Winkipinki and Zashikbuta (hereinafter individually and collectively referred to as the "Sanrio Company Characters").

C.     The revenue from products using Sanrio Company's Characters sold in the United States is substantial. The appearance and other features of Sanrio Company's Properties are inherently distinctive and serve to identify Sanrio Company as the source of products bearing Sanrio Company's Characters. The design, configuration and distinctive features of Sanrio Company's Characters and other Sanrio Company copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "Sanrio Company Copyrighted Designs") are wholly original with Sanrio Company and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., § 101 et seq. Sanrio Company is the owner of Sanrio Company's Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.

D.     Sanrio Company has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the

copyrights to Sanrio Company's Copyrighted Designs, and Sanrio Company owns one or more certificates of registration for works in which each of Sanrio Company's Copyrighted Designs appear. A representative sample of copyright registrations for Sanrio Company's Copyrighted Designs are indexed on Exhibit A. Sanrio Company's Copyrighted Designs manufactured, sold and distributed by Sanrio Company or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws. Sanrio Company and those acting under its authority have complied with their obligations under the copyright laws. Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title and interest in and to the copyrights in each of Sanrio Company's Copyrighted Designs.

E.      Sanrio Company owns all right, title and interest in and to and holds exclusive rights to develop, manufacture, market and sell products bearing the trademarks, trade names, service marks, artwork, characters and other distinctive elements for and incorporating Sanrio Company's Characters.

F.      Sanrio Company is the owner of world famous registered marks which serve to distinguish Sanrio Company's products. Some of those trademarks have been used continuously for over twenty-five years. Each year Sanrio Company spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality. A sample of trademark registrations for Sanrio Company's Characters is indexed on Exhibit B. (collectively the "Sanrio Company Trademarks").

G.      The Sanrio Company Trademarks are all valid, extant and in full force and effect. The Sanrio Company Trademarks are all exclusively owned by Sanrio Company. Sanrio Company has continuously used each of the Sanrio Company Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

H.      As a result of advertising and sales, together with longstanding consumer acceptance, the Sanrio Company Trademarks identify Sanrio Company's products and authorized sales of these products. The Sanrio Company Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world. Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title and interest in and to the copyrights in each of the Sanrio Company Trademarks.

I.      Through Sanrio, Sanrio Company has authorized and licensed the manufacture and sale of various different types of product which bear the "Sanrio Company Properties", including but not limited to stationery, school suppliers, lunch boxes, coloring books, apparel, backpacks and similar products.

8.    Plaintiff Disney Enterprises, Inc., (hereinafter "DEI" or "Plaintiff" or "Plaintiffs") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California.

A.      A significant aspect of DEI's business is the merchandising and licensing of distinctive characters and elements associated with its motion pictures and

television programs including, but not limited to, the world-famous fanciful characters Mickey Mouse, Minnie Mouse, Cinderella, Snow White, The Little Mermaid, Pocahontas, Mulan, Lighting McQueen, Buzz Lightyear and Woody, as well as from DEI's animated motion pictures and feature movies (hereinafter collectively referred to as the "DEI Characters") .

      B.      Each of the DEI Characters is covered by one or more copyright registrations with the U. S. Copyright Office (hereinafter collectively referred to as "DEI Copyrighted Properties"). A representative collection of registrations concerning the DEI Copyrighted Properties are indexed as Exhibit A.

      C.      DEI also owns all rights, title, and interest in and to, and holds the exclusive rights to market and sell merchandise bearing numerous trademarks, trade names, service marks, artwork, characters and other distinctive elements for and related to the DEI Characters (hereinafter the "DEI Device Marks"). DEI uses one or more of the DEI Device Marks in connection with the sale of diverse articles and has registered numerous trademarks with the United States Patent and Trademark Office.

      D.      DEI also owns all rights, title and interest in and to, and holds the exclusive rights to market and sell services and merchandise bearing the marks (among others) MICKEY MOUSE, MINNIE MOUSE, WINNIE THE POOH and DISNEY PRINCESS (hereinafter referred to as the "DEI Word Marks"). DEI possesses numerous federal and state registrations for these marks in conjunction with a wide variety of goods and services including, but not limited to, theme park and resort services, travel-

related goods, on-line services, apparel, books, newspapers, motion pictures, t.v. entertainment and related visual works. The DEI Device Marks and DEI Word Marks will collectively be referred to as the "DEI Trademarks." Some, but by no means all, of the federal registrations concerning the DEI Trademarks are indexed as Exhibit B.

       E.     As a result of advertising and sales, together with longstanding consumer acceptance, the DEI Trademarks identify DEI's products and authorized sales of these products and services. The DEI Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.

    9.     Plaintiff NIKE, Inc. (hereinafter "Nike" or "Plaintiff" or "Plaintiffs"), is a corporation duly organized and existing under the laws of the State of Oregon having its principal place of business in Beaverton, Oregon.

       A.     Nike is engaged in the manufacture, design and sale of footwear, apparel and related accessories. Among other products, Nike manufactures, sells and distributes apparel such as shirts, t-shirts, shorts, hats, jackets and pants. Products manufactured and sold by Nike are sold bearing the "NIKE" mark, or an arbitrary and distinctive emblem which has come to be known as the "Swoosh Design," or a composite mark consisting of the word "Nike" and the "Swoosh Design." Nike utilized these marks on shoes and apparel as trademarks of Nike's high quality products. Nike also developed and utilized the "Nike Air" mark as a trademark for its shoes and apparel. Nike sells in excess of $25,000,000,000 a year in merchandise bearing its distinctive trademarks.

B.    All products noted above are sold with the "Nike," "Swoosh Design" or composite "Nike" and "Swoosh Design" marks. Nike adopted and used the "Nike" and "Swoosh Design" marks in 1971. Nike registered the "Nike" mark in block letters on May 8, 1984, Registration No. 1,277,066 in class 25 for apparel. Nike registered the "Swoosh Design" on July 3, 1984, Registration No. 1,284,385 for apparel in class 25. Nike registered the composite mark of "Nike" and the "Swoosh Design" registration no. 1,237,469 on May 10, 1983, for apparel in class 25. And, more recently, Nike has registered the "Nike Air" mark, Registration No. 1,571,066, on December 12, 1989 for apparel in class 25; the "Air Jordan" mark, Registration No. 1,370,283 on November 12, 1985 for apparel in class 25; the "Air Jordan" Design, Registration No. 1,742,019 on December 22, 1992 for apparel and sports bags, backpacks and apparel in classes 18 and 25; the "Air Jordan" Design, Registration No. 1,558,100 on September 26, 1989 in class 25 for apparel; the "Air Force 1" mark, Registration No. 3,520,484 on October 21, 2008 in class 25 for footwear; and the "Just Do It" mark, Registration No. 1,875,307 on January 24, 1995 in class 25 for apparel. Nike duly registered the "Nike" trademark with the United States Patent and Trademark Office under Registration No. 2,196,735, issued October 13, 1998 for timepieces of all types, namely watches and chronographs. Nike duly registered the "Nike" trademark and "Swoosh Design" with the United States Patent and Trademark Office under Registration No. 2,209,815, issued December 8, 1998 for timepieces of all types, namely watches and chronographs. Additionally, Nike has registered the "Swoosh Design" with the United States Patent Office under Registration

No., 2,490,994, issue on September 18, 2001 for jewelry in International Class 14. Copies of these registrations are indexed on Exhibit B herein.

## DEFENDANTS

10.     Noel Forti Ahorrio doing business at Calle Rodriguez, Bayamon, PR 00961;

11.     Almances Colon doing business at Bayamon Shopping Center, Bayamon, PR 00957;

12.     Bienvenido Torres & Carmen Roman Rodriguez d/b/a BI Accessories doing business at Plaza del Carmen Mall, Caguas, PR 00725;

13.     Bordados & Uniformes Alangie doing business at Bo. Los Tamarindos, San Lorenzo, PR 00754;

14.     Bordados Intima doing business at Ave. Roberto Clemente, Carolina, PR;

15.     Jose Manuel Martinez d/b/a Boricua Eagle a/k/a Boricua Eagles doing business at # 91, Calle Dr. Beve, Payamon, PR 00961;

16.     Ricardo Callirgos Soubon d/b/a Camisetas Soccer doing business at Urb. La Cumbre, Calle Bayamon # 479, San Juan, PR 00926;

17.     Caribbean Novelty, Inc. doing business at Ponce Mall, Ponce, PR 00716;

18.     Elidio Gonzalez Velez d/b/a Caribbean Novelty doing business at 501 Ave. Borinquen, Arecbo, PR 00612;

19.     Carmen Kiosko doing business at Paseo De Diego, Rio Piedras, PR 00925;

20.     Elisio Romero Casellas doing business at Ave. 65 Inf., Marginal, Carolina, PR and at Brisas de Canovanas, Calle Zumbaor # 55, Canovanas, PR 00729;

21.     China Town  a/k/a China Town Fashion doing business at Plaza del Sol Mall, Carr. 29-I, Local 1605, Bayamon, PR 00956;

22.     China Town  a/k/a China Town Fashion doing business at Plaza Carolina Mall, 1st Floor, Loc # 70, Avenida Jesús M. Fragoso Carolina, PR 00983;

23.     China Town  a/k/a China Town Fashion doing business at; Plaza Centro Mall, Caguas, PR 00725;

24.     Communikart, Inc. d/b/a Apple Berry Store doing business at Plaza Carolina Mall, Avenida Jesús M. Fragoso, Carolina, PR 00983;

25.     Coyo Outfield doing business at Canton Mall, Calle Betances # 40, Bayamon, PR 00960;

26.     D'Fiesta Party Shop doing business at Calle Barbosa 208, Cataño, PR 00962;

27.     Dandy's Discount doing business at Calle McKinley # 26, Manati, PR 00674;

28.     Jose A. Ramos Laruy d/b/a Dare to be Unique doing business at Calle Gautier Benitez # 224, San Juan, PR 00915;

29.     Digitek Solutions a/k/a EvoTek doing business at Plaza Carolina Mall, Avenida Jesús M. Fragoso, Carolina, PR 00983;

30.    Luis Cortez Rivera and Betziada Reyes Figueroa d/b/a D'Show Imports doing business at Carolina Self Storage at 65th Infantry Road, # 7500, Carolina, PR 00985;

31.    El Dugout de William Meléndez doing business at Calle José de Diego # 35, Cidra, PR 00739;

32.    Rose Mary Nieves d/b/a Fraroni Designs doing business at Carr. 129, Km. 24.5, Lares, PR 00669;

33.    Garbados Y Mas Ideas doing business at Plaza del Sol Mall, Bayamon, PR 00961;

34.    Ezequiel Rivera Cruz d/b/a Gordo Fashion doing business at Carr. # 1, Caguas, PR 00725;

35.    Grafik Arte doing business at Carr. 129, Int. Carr. 490, Km. 3.0, Bo. Hato Arriba, Arecibo, PR 00612;

36.    Teofilo Guerrero doing business at Calle Camelia Soto, Esq. Paseo de Diego, Rio Piedras, PR and at Calle Ruisseñor # 970, Urb. Country Club, San Juan, PR 00924;

37.    Impreso Adonai doing business at Calle Baldorioty, Yauco, PR 00698;

38.    Joyeria Ensueño doing business at Yauco Plaza II, Local 62, Yauco, PR 00698;

39.    Joyeria Jerry Soso doing business at Calle Baldorioty # 21, Coamo, PR 00769;

40.    Joyeria La Mia doing business at 33 Calle Comercio, Yauco, PR 00698;

41.    Joyerías Borroto doing business at Paseo de Diego # 160, Rio Piedras, PR 00925;

42.    Juanito Last Name Unknown doing business at Paseo de Diego, Rio Piedras, PR 00925;

43.    Ruben Villafañe and Lina Paola Londono Ciro d/b/a Kasey Accessories #3 doing business at Paseo de Diego & 74, Rio Piedras, PR 00925;

44.    Key Cuts & More doing business at Plaza Carolina Mall, 2nd Level, Avenida Jesús M. Fragoso, Carolina, PR 00983;

45.    Michelle Ramos Llacora d/b/a Kiosko 34 doing business at El Pulguero de Caguas, Caguas, PR 00725;

46.    Kiosko Altagracias doing business at Paseo de Diego, Rio Piedras, PR 00925;

47.    La Piñata Party Shop doing business at Dr. Rufo # 15, Caguas, PR 00725;

48.    Las Gangas Party Shop doing business at Urb. Sierra Bayamon 75-49, Calle 64, Bayamon, PR 00956;

49.    Lebiram Steel doing business at Centro Plaza del Sur Mall, Ponce, PR 00717;

50.    Luis Last Name Unknown doing business at Carr. # 156, Front of Santa Isabel Mall, Santa Isabel, PR 00975;

51.     Luminocolors doing business at Kiosko # 52, El Pulguero de Arecibo, Arecibo, PR 00612;

52.     Dorothy Maldonado doing business at Calle Rodriguez, Bayamon, PR 00956;

53.     Maria Last Name Unknown doing business at Pasullo # 3, El Pulguero de Arecibo, Arecibo, PR 00612;

54.     Maribel Rivera Vega d/b/a Marie's Accessories doing business at La Rambla Plaza, Kiosko 1, Ponce PR 00716;

55.     Jose M. Garcia Oyola d/b/a Mary & Joe Fantasy doing business at Calle Dr. Veve #87, Bayamon, PR 00961;

56.     Mary's Gorras doing business at Calle de Diego, Rio Piedras, PR 00907;

57.     Mega Outlet doing business at Esq. Barbosa No. 62, Juana Diaz, PR 00795;

58.     Millenium T-Shirt Print doing business at Muñoz Rivera # 105, San Lorenzo, PR 00754;

59.     Names and Plates doing business at Plaza Carolina Mall, 1st Level, Avenida Jesús M. Fragoso, Carolina, PR 00983;

60.     New Age Digital doing business at Urb. La Plata, Calle Turquesa @ A-22, Cayey, PR and at Ramon Rosario # 6, Villa Alegre, Cayey, PR 00736;

61.     Pedro Last Name Unknown doing business at Calle William Jones, Esq. Paseo de Diego, San Juan, PR 00915;

62.     Qilong Tao Herbal Imports doing business at Plaza Guayama, Guayama, PR 00784;

63.     Relojeria El Otro Amigo doing business at Calle Barbosa # 170, Cataño, PR 00962;

64.     Sandra Last Name Unknown doing business at El Pulguero de Caguas, Caguas, PR 00725;

65.     Juan Rafael Alicia Rodriguez d/b/a Sports Ambition doing business at Plaza Centro Mall, Caguas, PR 00725;

66.     Street Talk 1 doing business at Plaza Carolina Mall, Carolina, PR 00982;

67.     Sugeli Kiosko doing business at Kiosko # 35, El Pulguero de Caguas, Caguas, PR 00725;

68.     Tienda Glamour a/k/a Glamour Café doing business at Calle Bobby Capo # 6, Coamo, PR 00769;

69.     Utuado Beauty Supply doing business at Calle Barcelo # 23, Utuado, PR 00641;

70.     Vasconia a/k/a London City doing business at Paseo de Diego # 60, Rio Piedras, PR 00925; and

71.     Zona Urbana doing business at Calle San Particio, Loiza, PR 00772.

72.     The acts complained of herein arose out of the same transactions, occurrences, or series of transactions or occurrences, and there are questions of law and fact common to all Defendants which will arise in this action. Accordingly, the convenient administration of justice will be served by the joinder of the claims set forth below, as the likelihood of a multiplicity of actions will be reduced. Joinder of these Defendants is further supported by the striking similarity in the counterfeit merchandise sold by each of the Defendants. Moreover, much of the counterfeit merchandise has been traced from smaller co-Defendant retailers to larger co-Defendant wholesalers, and ultimately to co-Defendant manufacturers. As a result, the counterfeit merchandise being sold originates from the same source or sources and no doubt reached the Defendants through the same or similar channels of trade.

73.     Each of the trademark properties, which Plaintiffs are asserting in this action, have been registered with the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. § 1051), as shown more clearly on aggregate Exhibit B. All trademarks are current and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.

74.     Each of the properties to which the Plaintiffs contend they hold the exclusive copyright which properties include, but are not limited to, original motion pictures, books, television shows, magazines, etc., are copyrightable under the Copyright Act (17 U.S.C. § 101 et. seq.). Each of the properties has been copyrighted registered in the Copyright Office of the United States, as shown more clearly on

aggregate Exhibit A. Plaintiffs are either the owner of the registration of the original copyright or the exclusive licensee.

75.    At all times mentioned herein, the Plaintiffs have been and still are the owners for the United States and elsewhere of an exclusive right to manufacture, distribute, sell or offer for sale, or are the assignees or exclusive licensees with respect to such rights of the copyrights and trademarks indexed on Exhibits A and B herein.

<u>FACTUAL BACKGROUND</u>

76.    The Plaintiffs have created and/or utilized the copyrighted works and distinctive trademarks enumerated above and indexed on Exhibits A and B. Each of the distinctive trademarks when applied to the high quality apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise, noted more fully above, signifies to the purchaser that the product originates exclusively with Plaintiffs and is manufactured to the highest quality standards. Additionally, each of the copyrighted properties have become so popular that each of the Plaintiffs owning copyrighted properties have at one time or another licensed them in conjunction with apparel and related merchandise. Whether the Plaintiffs manufacture the product themselves, or license others to do it, each of the named Plaintiffs has ensured that products bearing its copyrighted properties or licensed trademarks are manufactured to the highest standard.

77.    The enormous popularity of Plaintiffs' products is not without costs as evidenced by the increasing numbers of counterfeiters in the United States and worldwide.

78.    Each of the Defendants named in this Complaint has been and threatens to continue to manufacture, distribute, offer for sale and sell counterfeit merchandise bearing exact copies, or colorable imitations of the Plaintiff's trademarks and copyrighted properties. See aggregate Exhibit E to the Memorandum in Support of Motion for Temporary Restringing Order, Seizure Order and Order to Show Cause. None of the Defendants have ever been authorized by any of the Plaintiffs at any time to reproduce, import, copy or sell any apparel, shoes, accessories, bags, watches, jewelry, toys, sunglasses, stickers, decals, and related merchandise bearing the Plaintiff's trademarks and copyrights. See aggregate Exhibit F to the Memorandum in Support of Motion for Temporary Restringing Order, Seizure Order and Order to Show Cause.

<u>COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 et. seq.)</u>

79.    Plaintiffs Warner Bros. Entertainment, Inc., DC Comics, Disney Enterprises, Inc., and Sanrio, Inc. bring the following claim of copyright infringement against the Defendants, and incorporate by reference allegations 1 through 78 above. For the purpose of Count I, the Plaintiffs listed in this paragraph shall be referred to as the "Copyright Plaintiffs."

80.    Defendants have manufactured, distributed, sold or offered for sale, unauthorized or counterfeit apparel, shoes, accessories, bags, watches, jewelry, toys,

sunglasses, stickers, decals, and related merchandise bearing the copyrighted properties of the Copyright Plaintiffs. An itemized list of some, but not all, of said copyrighted properties infringed upon appears in Exhibit A.

81.     Defendants have never been authorized by the Copyright Plaintiffs to distribute the Copyright Plaintiffs' copyrighted properties; nor have the Copyright Plaintiffs ever authorized, licensed or in any manner allowed the Defendants the right to manufacture, distribute, sell or offer for sale any merchandise, including, but not limited to apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise, which bear any of said copyrighted properties.

82.     Defendants have manufactured, distributed, sold or offered for sale unauthorized or counterfeit apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise which incorporate the Copyright Plaintiffs' copyrighted properties, in direct violation of the Copyright Plaintiffs' copyrights.

83.     Each Defendant, individually, and/or in conspiracy with the other named Defendants, have manufactured, distributed, sold or offered for sale counterfeit or unauthorized apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise bearing the Copyright Plaintiffs' copyrighted properties. Defendants' aforementioned acts were done with actual as well as constructive knowledge of the Copyright Plaintiffs' exclusive rights, and said actions

have contributed to the infringing, copying, duplication, sale and offer for sale of counterfeit copies of the Copyright Plaintiffs' copyrighted properties.

84.    Each of the aforementioned acts by each Defendant, which infringes one of the Copyright Plaintiffs' copyrights, is the basis for a separate claim against each Defendant under the Copyright Act. For the sake of brevity, each and every allegation hereinabove set forth which is pertinent to each separate claim by the Copyright Plaintiffs against each Defendant is hereby repeated as to each such claim with the same force and effect as if such claim and the allegation pertinent hereto had been set forth herein separately and in full.

85.    Upon information and belief, Defendants' acts as hereinabove alleged are willful infringements of and have irreparably harmed the Copyright Plaintiffs' copyrights and exclusive rights, and threaten further infringements and further irreparable harm to Copyright Plaintiffs' copyrights and exclusive rights. Further harm and injury to Copyright Plaintiffs is imminent, and the Copyright Plaintiffs are without an adequate remedy at law with such respect to such harm and injury. Unless Defendants' acts are enjoined and the illicit counterfeiters of the Copyright Plaintiffs' copyrighted properties are stopped, it is highly probable that one or more of the Defendants, or others under their direction, will manufacture, distribute, sell or offer for sale additional counterfeit apparel, shoes, accessories, bags, watches, jewelry, toys, sunglasses, stickers, decals, and related merchandise which bear the Copyright

Plaintiffs' copyrighted properties causing further irreparable injury to Copyright Plaintiffs.

86.    Defendants have obtained gains, profit and advantages as a result of their wrongful acts noted above.

87.    The Copyright Plaintiffs are entitled to, at its option in lieu of actual damages and the Defendants' profits, statutory damages as provided by 17.U.S.C. § 504.

<u>COUNT II - TRADEMARK INFRINGEMENT<br>AND TRADEMARK COUNTERFEITING</u>

88.    Plaintiffs incorporate by reference paragraphs 1 through 78, and bring the following claim for trademark infringement, pursuant to 15 U.S.C. § 1114, against the Defendants.

89.    The Plaintiffs own the exclusive trademark rights to the Plaintiffs' Trademarks indexed on Exhibit B.  All of the trademark registrations are in full force and effect and are owned by the respective Plaintiff. In many cases the trademarks have become incontestable pursuant to 15 U.S.C. § 1065.

90.    All advertising and products, including apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise, which have been sold by the Plaintiffs or under their authority, have been manufactured and distributed in conformity with the provisions of the United States Trademark Law.

91.     Notwithstanding each of the Plaintiffs' well known and prior common law and statutory rights in the trademarks indexed on Exhibit B, Defendants have, with actual notice of the Plaintiffs' federal registration rights, and long after the Plaintiffs established their rights in the trademarks indexed on Exhibit B, adopted and used the trademarks in the Commonwealth of Puerto Rico and interstate commerce.

92.     Defendants' acts of infringement of Plaintiffs' registered trademarks have been committed in the District of Puerto Rico, within the jurisdiction of this Court. More specifically, the Defendants have manufactured, imported, distributed, sold and offered for sale apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise bearing the Plaintiffs' Trademarks noted on Exhibit B without the authorization of the Plaintiffs and have continued to offer for sale such products to the public. Defendants have sold or offered for sale in Puerto Rico and interstate commerce, apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise bearing the trademarks noted on Exhibit B, thus creating the likelihood of confusion, deception and mistake.

93.     Each Defendant, individually, and/or in conspiracy with the other named Defendants, has imported, distributed, sold or offered for sale counterfeit or unauthorized apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise bearing the Plaintiffs' distinctive trademarks. Defendants' aforementioned acts were done with actual as well as

constructive knowledge of the Plaintiff's exclusive rights, and said actions have contributed to the infringing, copying, duplication, sale and offer for sale of counterfeit copies of merchandise bearing the Plaintiff's distinctive trademarks.

94.     The Plaintiffs have no control over the quality of the Defendants' merchandise bearing counterfeit reproduction of the Plaintiffs' Trademarks. Because of the likelihood of confusion as to the source of the Defendants' merchandise, Plaintiffs' reputations and goodwill in their trademarks are and will be at the mercy of the Defendants' unscrupulous tactics.

95.     Each of the aforementioned acts, which infringe at least one of the Plaintiff's trademarks, is the basis for a separate claim against each Defendant under the Lanham Act. For the sake of brevity, each and every allegation hereinabove set forth which is pertinent to each separate claim against each Defendant is hereby repeated as to each such claim with the same force and effect as if such claim and the allegation pertinent hereto had been set forth herein separately and in full.

96.     Said acts of infringement will cause irreparable injury to the Plaintiffs if the Defendants are not restrained by the Court from further violation of the Plaintiffs' rights, as Plaintiffs have no adequate remedy at law.

97.     The Plaintiffs have suffered damages as a result of the aforesaid acts.

98.     Defendants' use in commerce of the Plaintiffs' Trademarks in the sale of apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise is an infringement of the Plaintiffs' registered

trademarks in violation of 15 U.S.C. § 1114(1) and is the basis for a temporary restraining order and seizure order pursuant to 15 U.S.C. § 1116(d).

99.    Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively with the intent to injure the Plaintiffs and their businesses.

<u>COUNT III - FALSE DESIGNATION OF ORIGIN<br>AND FALSE DESCRIPTION (15 U.S.C. § 1125(a))</u>

100.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 78, 80 through 87 and 89 through 99 above.

101.    The Plaintiffs' Trademarks and Copyright Plaintiffs' copyrighted properties have acquired a secondary and distinctive meaning and the public has come to identify the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties with their respective owner or exclusive licensee.

102.    The unauthorized apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise, which have been distributed and sold by the Defendants, exactly duplicate and appropriate the likeness of the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties in order to delude and confuse the public into believing that the apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise have been authorized and/or sponsored by the Plaintiffs.

103.    The sale of unauthorized products bearing the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties will dilute the goodwill and reputation of the Plaintiffs.

104.    The sale of unauthorized products bearing the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties, which are of an inferior quality to the authorized and authentic product, will further dilute the good will and reputation of the Plaintiffs.

105.    Defendants, by misappropriating and using the likenesses of the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties, in connection with the sale of such products, are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of its products. Defendants have caused such products to enter into interstate commerce with full knowledge of the falsity of the designation of its origin and description and representation in an effort to mislead the purchasing public into believing that its products are authorized or emanate from the Plaintiffs.

106.    These acts constitute a violation of Section 43 of The Lanham Act, 15 U.S.C. § 1125.

107.    The continued use by the Defendants of the likenesses of the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties has caused, and unless refrained, will continue to cause serious irreparable injury and harm to the Plaintiffs, as the Plaintiffs have no adequate remedy at law.

108.   Defendants have obtained gains, profits and advantages as a result of its unlawful acts.

109.   Plaintiffs have suffered monetary damages as a result of the Defendants' acts.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand interim relief in the form of a Temporary Restraining Order, Seizure Order, and Preliminary Injunction, and consistent with that, entry of a judgment against each and every Defendant as follows:

1.   Permanent injunctive relief restraining each Defendant, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, from:

(a)   further infringing of the Plaintiffs' copyrighted properties and trademarks by manufacturing, importing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products, including apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise, not authorized by the Plaintiffs bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' copyrighted properties and trademarks ("Unauthorized Products");

(b)   using any simulation, reproduction, counterfeit, copy or colorable imitation of any of the Plaintiffs' Trademarks in connection with the promotion,

34

advertisement, display, sale, offering for sale, manufacture, importation, production, circulation or distribution of Unauthorized Products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to the Plaintiffs, or to any goods sold, manufactured, sponsored or approved by, or connected with, the Plaintiffs;

(c)     making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed or sold by the Defendants are in any manner associated or connected with the Plaintiffs, or are sold, manufactured, licensed, sponsored, approved or authorized by the Plaintiffs;

(d)     engaging in any other activity constituting unfair competition with the Plaintiffs, or constituting an infringement of the Plaintiffs' copyrighted properties or trademarks or of Plaintiffs' rights in, or to use or to exploit said trademarks, or constituting any dilution of any of the Plaintiffs' name, reputation, or good will;

(e)     effecting assignments or transfers, forming new entities or association or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (d); and

(f)     secreting, destroying, altering, removing or otherwise dealing with the Unauthorized Products or any books or records which may contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling,

marketing, offering for sale, advertising, promoting or displaying of all unauthorized products which infringe any of Plaintiffs' copyrights or trademarks.

2.      Directing that Defendants deliver for destruction all Unauthorized Products, including apparel, shoes, accessories, bags, watches, jewelry, toys, mobile phone accessories, stickers, decals, and related merchandise, and labels, signs, prints, packages, dyes, wrappers, receptacles, silk screens, heat transfers, embroidery templates, computers files, software and advertisements relating thereto in its possession or under its control bearing the Plaintiffs' Trademarks and Copyrighted Plaintiffs' copyrighted properties or any simulation, reproduction, counterfeit, copy or colorable imitations thereof, and all plates, molds, heat transfers, screens, matrices, branding devices, imprinters, software and other means of making the same.

3.      Directing that each Defendant report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with paragraphs 1 and 2 above.

4.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendants are authorized by the Plaintiffs, or related in any way to the Plaintiffs' products.

5.      That Warner Bros. Entertainment Inc., DC Comics, Sanrio, Inc., and Disney Enterprises, Inc., the Copyright Plaintiffs, be awarded from each Defendant found to be in violation of their copyrighted properties, the Defendant's profits, or at

Copyright Plaintiffs' election, an award of statutory damages pursuant to 15 U.S.C. § 504, of no less than Seven Hundred and Fifty Dollars ($750) nor more than Thirty Thousand Dollars ($30,000) per copyrighted property infringed upon by each Defendant, at the Court's discretion, or should this Court find that such infringement was willful, that this Court, pursuant to its discretion, award statutory damages of up One Hundred and Fifty Thousand Dollars ($150,000) for each copyrighted property infringed upon by each such Defendant.

6.     That Plaintiffs, Warner Bros. Entertainment, Inc., DC Comics, Sanrio, Inc., Disney Enterprises, Inc., and NIKE, Inc. be awarded from each Defendant selling products containing unauthorized trademarks belonging to Plaintiffs three times such Defendant's profits therefrom, after an accounting, pursuant to 15 U.S.C. § 1114 and § 1117, or at the election of Plaintiff, statutory damages as provided by § 1117(c), of between One Thousand Dollars ($1,000) and Two Hundred Thousand Dollars ($200,000), per trademark per type of goods sold, which is counterfeited by each Defendant, at the Court's discretion, or should this Court find that the Defendant's use of the counterfeit mark was willful, and in the Court's discretion, not more than Two Million Dollars ($2,000,000) per counterfeit mark per type of goods sold by each Defendant.

7.     That the Plaintiffs be awarded from each Defendant selling products containing unauthorized trademarks belonging to such Plaintiff three times such

Defendant's profits therefrom, after an accounting, pursuant to 15 U.S.C. § 1125(a) and § 1117.

8.     That the Plaintiffs be awarded their reasonable attorney's fees and investigative fees pursuant to 15 U.S.C. § 1117.

9.     That the Plaintiffs be awarded their costs in bringing this action.

10.    That the Plaintiffs have such other and further relief that this Court deems just.

Dated this 3rd day of February, 2014.

Respectfully submitted,

_____
Marta L. Rivera-Ruiz
USDC-PR 221201
Arturo Diaz-Angueria
USDC-PR 117907
Cancio, Nadal, Rivera & Diaz
P.O. Box 364966
San Juan, Puerto Rico 00936-4966
Telephone: 787.767.9625
Fax: 787.764.4430
mrivera@cnrd.com
Attorneys for Plaintiffs

*Seeking Admission Pro Hac Vice*
Stephanie Boomershine
Florida Bar No.: 0046667
Michael W.O. Holihan
Florida Bar No.: 0782165
Holihan Law
1101 North Lake Destiny Road, Suite 275
Maitland, Florida 32751
Telephone: 407.660.8575
Fax: 407.660.0510
stephanie.boomershine@holihanlaw.com

Attorneys for Plaintiffs